UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| ALEXANDER BRIAN ARREDONDO, )<br>a/k/a  CARLOS ARREDONDO, )<br>　　　　Plaintiff )<br> )<br>v. ) <br> )<br>DAVID ROBERTO, FRANCISCO RODRIGUEZ, )<br>BIENVENIDO DELACRUZ, DANA LAMB, )<br>and CITY OF BOSTON, )<br>　　　　Defendants )<br> ) | Civil Action No. 12-cv-11785-FDS |

**FIRST AMENDED COMPLAINT AND JURY CLAIM**
**AS TO DEFENDANT CITY OF BOSTON ONLY**

**INTRODUCTION**

　　1.　This is a civil rights action for the unlawful arrest, and use of excessive force during the arrest, of Alexander Brian Arredondo, also known as Carlos Arredondo, while he was lawfully paying his respects to the funeral motorcade of Senator Edward M. Kennedy.  On or about August 29, 2009, a Boston police officer approached Mr. Arredondo while his pickup truck was lawfully parked in a handicapped parking space in front of Boston Police Headquarters, One Schroeder Plaza, Boston, Massachusetts.  The officer told Mr. Arredondo to take down an American flag he was raising and to move the truck.  Although, the order of the officer was illegal, Mr. Arredondo began to comply with the order.  The officer, nevertheless, grabbed Mr. Arredondo and threw him to the sidewalk.  Three other Boston Police officers grabbed Mr. Arredondo and all of the officers assaulted him while he was immobilized, prone, on the sidewalk.  Mr. Arredondo was arrested and charged with disorderly conduct, and resisting arrest.  All charges were ultimately dismissed.

2. The City of Boston is sued for failing to properly train its police officers in properly enforcing parking regulations, municipal codes and regulations, and state statutes. The City also failed to supervise or discipline police officers to assure that they followed the law in making arrests of bystanders on lawfully designated parade or motorcade routes. The City permitted officers to feel that they could commit misconduct without fear of punishment by tolerating lying and untruthful incident reports submitted by Boston Police officer. The City had a police or custom of monitoring and tracking anti-war and peace groups and individuals, creating a climate wherein individuals subjective to surveillance and investigation, such as plaintiff, were more likely to intimidated, harassed, and arrested by Boston Police officers.

**JURISDICTION**

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution, the Massachusetts Civil Rights Act, and Massachusetts common law. This court has jurisdiction over all federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 28 U.S.C. §§ 1367 provides supplemental jurisdiction over state law claims.

**PARTIES**

4, Plaintiff Alexander Brian Arredondo, also known as Carlos Arredondo, is a resident of Boston, Suffolk County, Massachusetts, and is a native of Costa Rica and a naturalized citizen of the United States.

5. Defendant David Roberto was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

6. Defendant Francisco Rodriguez was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint

were taken under the color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

7. Defendant Bienvenido Delacruz was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

8. Defendant Dana Lamb was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

9. Defendant City of Boston is a municipal corporation duly organized and existing according to the laws of the Commonwealth of Massachusetts.

**FACTS**

10. On August 29, 2009, the morning of the late Senator Edward M. Kennedy's funeral, plaintiff parked his pickup truck in front of Boston Police Headquarters, One Schroeder Plaza, Boston, in a handicapped parking space, for the purpose of honoring Senator Kennedy as the funeral motorcade passed by Police Headquarters on its way to the church from the John F. Kennedy Library.

11. The funeral motorcade route had been well publicized and it was plaintiff's intention and desire to be present along the motorcade route with his truck in order to create a memorial to Senator Kennedy in appreciation for the assistance Senator Kennedy had provided to plaintiff and his family following the death of plaintiff's son, Alexander Arredondo, in August, 2004, while serving as a Marine in Iraq.

12. When parking his truck in front of Boston Police Headquarters, plaintiff was accompanied by his wife, Mélida Arredondo, who was disabled and walking with a cane. Mrs.

Arredondo had possession of a "Disabled Persons Parking Identification Placard," numbered P46101992, which was prominently hanging from the interior rear view mirror of the truck, and which was clearly visible from outside the truck.

13. In anticipation of paying their respects to Senator Kennedy, plaintiff and his wife had prepared a cardboard sign that read "Thank You Senator Kennedy" on one side and "Gracias Senador Kennedy" on the other side.

14. Plaintiff had decorated his pickup truck as a memorial to Senator Kennedy, consisting of a display containing pictures of him with Senator Kennedy, copies of letters the Senator had sent to the family, his son's combat boots, and a folded American flag in a wooden display case. It was plaintiff's intention to raise a second American flag on a pole that would extend to a height of 26 feet from the bed of the pickup truck.

15. After plaintiff and his wife parked at the handicapped space, both of them emerged from the vehicle. Mrs. Arredondo, carrying the cardboard sign, a camera, and walking with a cane, proceeded toward Ruggles street to watch the motorcade.

16. Plaintiff remained at the vehicle and proceeded to raise the American flag. While doing so, plaintiff was approached by a Boston police officer, believed to be defendant David Roberto.

17. Defendant Roberto walked toward plaintiff, told him that he was parked in a handicapped space, and told him to move the vehicle immediately. Plaintiff responded that he had his wife's handicapped placard and that she was walking toward Ruggles Streets. Defendant Roberto again told plaintiff that he had to move the vehicle immediately.

18. Plaintiff told defendant Roberto that he needed to take down the 26 foot flag pole before he moved the vehicle and that he had to summon his wife who was some distance away. Defendant Roberto stated to plaintiff that if he did not leave "now" he would be arrested.

19. Plaintiff asked for time to lower the American flag and remove the 26 foot pole, and to summon his wife. Defendant Roberto immediately made a radio call to summon other officers. In a moment, plaintiff was surrounded by three Boston Police officers, believed to be defendants Rodriguez, Delacruz and Lamb, who grabbed him and dragged him from the area next to his vehicle to the sidewalk. On the sidewalk, plaintiff was thrown to the pavement, face down, and handcuffed with his arms behind his back.

20. Defendant Roberto and defendants Rodriguez, Delacruz and Lamb were variously on top of plaintiff, continuously smashing him to the pavement, with their knees on his legs and ankles. Plaintiff did not strike any defendant or otherwise resist.

21. Mrs. Arredondo, having become aware of the commotion, walked with her cane back to where her husband was being assaulted by Boston Police officers and observed at least three officers on top of plaintiff. One officer tried and failed to take away her camera when he apparently realized that she was photographing the activity.

22. Plaintiff was arrested by defendants Roberto, Rodriguez, Delacruz and Lamb, and transported to District B-2 station, where he was booked and placed in a cell. He complained of severe pain and difficulty breathing and was transported to Boston Medical Center about one hour after his arrival at the station.

23. During the booking process, a Boston Police officer informed plaintiff's wife that the police were contacting Immigration and Customs Enforcement (ICE), that the Secret Service was being called into the case, and that her husband could face immigration difficulties as a result of this incident.

24. Plaintiff was hospitalized at Boston Medical Center at about 10:23 a.m., and was shackled to a bed and guarded by two Boston Police officers. He was given no opportunity to confer with his wife. After about nine hours of being shackled to a hospital bed, a bail commissioner arrived at the hospital, and plaintiff was released. Plaintiff remained at Boston

5

Medical Center overnight for observation. He was discharged the following morning, and was able to attend the memorial mass for his son, Alexander Arredondo, who had been killed in Iraq five years previously.

25. Following his arrest, imprisonment, and hospitalization, plaintiff was charged in the Roxbury District Court (Docket No. 0902CR004255) with disorderly conduct in violation of M.G.L. c. 272, § 53, and resisting arrest in violation of M.G.L. c. 268, § 32B. The complaint was dismissed on January 28, 2010 at the request of the Commonwealth.

26. As a result of the physical violence inflicted upon him by defendants Roberto, Rodriguez, Delacruz and Lamb, plaintiff suffered injury to his shoulder, left ankle and back. In addition to the physical pain, and shackled detention to a hospital bed, plaintiff suffered emotional and mental pain, including public shame and humiliation.

27. The police report filed by defendant Roberto bore little resemblance to the actual facts of the incident and defendant's arrest.

28. Plaintiff acted lawfully in parking in the handicapped parking space and in exercising his First Amendment rights to assembly and speech as others were doing along the route of the funeral motorcade on the morning on August 29, 2009. He committed no violations of any City of Boston rules or regulations or any Massachusetts laws. After his arrest and while the criminal charges were pending, plaintiff suffered emotional distress, and was preoccupied with the case. He was upset and had trouble sleeping. His relationship with his wife, family members and friends were affected. He had to hire a criminal defense attorney to defend him from the baseless charges. He continues to suffer from the unlawful arrest and use of excessive force.

29. The City of Boston had an obligation to properly train its police officers on the identification and enforcement of parking violations, the violations of municipal codes and regulations, and the violations of statutes, insofar as they relate to the treatment of individuals

6

lawfully exercising their constitutional rights of assembly and speech at public events and in public places, and a further obligation to train its police officers on the proper criteria to be utilized in making arrest decisions based on said alleged violations.  The City failed in said obligations and such failure amounted to deliberate indifference to the constitutional rights of persons with whom the police came in contact.

30. At public demonstrations and events in the City of Boston during the period from March, 2003, at the commencement of the U.S. invasion of Iraq, through the date of the incident alleged herein (August 29, 2009), and subsequently, Boston Police officers, due to the lack of training referred to in paragraph 29, curtailed and infringed the constitutional rights of individuals who were lawfully assembled and exercising their First Amendment rights.

31. The City of Boston had an obligation to train its police officers in the requirement of accurately, truthfully and completely preparing and filing reports of incidents resulting in an arrest, and of truthfully reporting, both orally and in writing, the events relating to any incident in which they were involved.  The City failed in said obligation and such failure amounted to deliberate indifference to the constitutional rights of persons with whom the police came in contact.  The incident report filed by defendant Roberto concerning the August 29, 2009 arrest of defendant is untruthful in numerous respects.  One month after the incident alleged herein, as reported in the September 27, 2009, Boston Herald ("BPD boss to cops: Tell truth or face consequences"), Boston Police Commissioner Edward F. Davis, in recognition of said failure to train and in acknowledgement of the pervasive problem of lying by police officers, announced a new policy that would allow him to fire any police officer caught lying in the line of duty.

32. At the time of the events alleged herein, the City of Boston had a policy or custom of tolerating lying and untruthful incident reports submitted by Boston Police officers.  Said policy or custom was a moving force behind the constitutional violations alleged herein.  The incident report filed by defendant Roberto concerning the August 29, 2009, arrest of defendant is

7

untruthful in numerous respects. One month after the incident alleged herein, as reported in the September 27, 2009, Boston Herald ("BPD boss to cops: Tell truth or face consequences"), Boston Police Commissioner Edward F. Davis, in recognition of said policy or custom and in acknowledgement of the pervasive problem of lying by police officers, announced a new policy that would allow him to fire any police officer caught lying in the line of duty.

33. From 2005 to the time of the incident alleged herein, and to the present, the City of Boston, through the Boston Police Department and its fusion spying center, the Boston Regional Intelligence Center (BRIC), had a policy or custom of collecting and keeping information about constitutionally protected speech and political activity, and of monitoring and tracking of anti-war and peace groups, and individuals, and of tracking and recording the internal dynamics and political beliefs of peaceful groups and individuals, including plaintiff

34. From 2005 to the time of the events alleged herein, plaintiff and his wife were active in the anti-war and peace movements in the Boston area and nationwide. Both plaintiff and his wife were members of Gold Star Families for Peace, Military Families Speak Out, and Veterans For Peace and participated in numerous peaceful rallies, demonstrations and protests against the wars in Iraq and Afghanistan and against political leaders who supported these wars.

35. In engaging in the conduct referred to in paragraph 33, as detailed in the report, "Policing Dissent: Police Surveillance of Lawful Political Activity in Boston," American Civil Liberties Union of Massachusetts; Nation Lawyers Guild, Massachusetts Chapter, dated October, 2012, defendant City: 1) actively monitored and videotaped events and demonstrations, retaining the footage, and writing "intelligence reports" on peaceful protesters, including plaintiff; 2) investigated the beliefs and communications of peaceful demonstrators, giving them labels like "extremists" even when Boston Police officers could not plausibly suspect them of any crime; and 3) improperly retained this information for years, even though it never should have been collected.

8

36. From 2005 to the present, the City of Boston, through the Boston Police Department, has been creating, retaining and possibly sharing "intelligence reports" in violation of 42 U.S.C. §§ 3782(a), 3789(g); 28 C.F.R. § 23.20. Boston Police Department reports were not purged in accordance with its own guidelines.

37. The conduct of defendant City as set forth in paragraphs 33 through 36 was the result of a policy or custom of said City which created a climate wherein individuals subjected to surveillance and investigation, such as plaintiff, who were exercising their First Amendment rights, were more likely to be intimidated, harassed, and arrested by Boston Police officers than other individuals who were not subjected to said surveillance and investigation. Such policy or custom was a moving force behind plaintiff's arrest, beating and prosecution.

## COUNT I
### (42 U.S.C. § 1983 Claim Against Individual Defendants Roberto, Rodriguez, Delacruz, and Lamb: Unconstitutional Arrest)

38. Paragraphs 1 through 31 of the original Complaint are re-alleged as if fully set forth herein.

39. Defendants Roberto, Rodriguez, Delacruz and Lamb, acting in concert, arrested plaintiff.

40. Defendants Roberto, Rodriguez, Delacruz and Lamb deprived plaintiff of his well-established rights to freedom of speech under the First Amendment to the United States Constitution, and to freedom from arrest without probable cause under the Fourth Amendment to the United States Constitution as applied under the Fourteenth Amendment.

41. As a direct and proximate result of defendants' actions, plaintiff suffered the damages as described above.

## COUNT II
### (42 U.S.C. § 1983 Claim Against Individual Defendants
### Roberto, Rodriguez, Delacruz, and Lamb: Unreasonable Use of Force)

42. Paragraphs 1 through 35 of the original Complaint are re-alleged as if fully set forth herein.

43. Defendants Roberto, Rodriguez, Delacruz and Lamb, acting in concert, used unreasonable and excessive force against plaintiff.

44. Defendants Roberto, Rodriguez, Delacruz and Lamb deprived plaintiff of a well-established right to freedom from the use of excessive force.

45. Their actions were taken with reckless disregard for plaintiff's constitutional rights.

46. As a direct and proximate result of defendants' actions, plaintiff suffered the damages as described above.

## COUNT III
### (Massachusetts Civil Rights Act, M.G.L. c. 12, § 111 Claim Against Defendants
### Roberto, Rodriguez, Delacruz, and Lamb)

47. Paragraphs 1 through 40 of the original Complaint re-alleged as if fully set forth herein.

48. Acting jointly and in concert, defendants Roberto, Rodriguez, Delacruz and Lamb violated the plaintiff's civil rights under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 111, by threats, intimidation, and coercion.

49. As a direct and proximate result of defendants' actions, plaintiff suffered the damages described above.

## COUNT IV
### (Tort of Assault and Battery Against Defendants
### Roberto, Rodriguez, Delacruz, and Lamb)

50. Paragraphs 1 through 43 of the original Complaint are re-alleged as if fully set forth herein.

51. Defendants Roberto, Rodriguez, Delacruz and Lamb committed an assault and battery upon the plaintiff.

52. As a direct and proximate result of defendants' actions, plaintiff suffered the damages described above.

## COUNT V
### (Tort of False Imprisonment Against Defendants
### Roberto, Rodriguez, Delacruz, and Lamb)

53. Paragraphs 1 through 46 of the original Complaint are re-alleged as if fully set forth herein.

54. Defendants Roberto, Rodriguez, Delacruz and Lamb used excessive and unreasonable force in unlawfully arresting the defendant or assisting the arresting officer, in violation of the law of this Commonwealth.

55. By reason of the unlawful conduct of said defendants, the plaintiff was deprived of his personal liberty, suffered great pain and anguish of mind, and was damage as described above.

## COUNT VI
### (Tort of Intentional Infliction of Emotional Distress Against Defendants
### Roberto, Rodriguez, Delacruz, and Lamb)

56. Paragraphs 1 through 49 of the original Complaint are re-alleged as if fully set forth herein.

57. The conduct of defendants Roberto, Rodriguez, Delacruz and Lamb in arresting and assaulting plaintiff was extreme and outrageous.

11

58. Said defendants intended to cause, or recklessly disregarded the probability of causing, emotional distress to plaintiff.

59. As a proximate result of defendants' conduct, plaintiff suffered extreme emotional distress, and was otherwise damage as described above.

### COUNT VII
### (Tort of Negligent Infliction of Emotional Distress, M.G.L. c. 258 Against Defendants Roberto, Rodriguez, Delacruz, and Lamb)

60. Paragraphs 1 through 53 of the original complaint are re-alleged as if fully set forth herein.

61. As a result of the negligence and lack of due care of defendants Roberto, Rodriguez, Delacruz and Lamb, in the decision to arrest defendant and the actual arrest, defendant suffered physical injuries as set forth above, and also suffered extreme emotional distress.

62. Pursuant to M.G.L. c. 258, § 4, written notice of plaintiff's claim was provided to said defendants' employer, defendant City of Boston, on or about March 28, 2011, with said notice being received by defendant City of Boston on or about April 4, 2011.

### COUNT VIII
### (Tort of Malicious Prosecution Against Defendants Roberto, Rodriguez, Delacruz, and Lamb)

63. Paragraphs 1 through 56 of the original complaint are re-alleged as if fully set forth herein.

64. Acting jointly, defendants Roberto, Rodriguez, Delacruz and Lamb caused criminal charges to be brought against plaintiff without probable cause and with malice. The criminal charges were all disposed of favorably to plaintiff.

65. As a direct and proximate result of defendants' actions, plaintiff suffered the damages described above.

## COUNT IX
### (42 U.S.C. § 1983 Claim Against Defendant City of Boston)

66. Paragraphs 1 through 65 are re-alleged as if fully set forth herein.

67. The violation of plaintiff's constitutional rights by defendants Roberto, Rodriguez, Delacruz and Lamb were caused by the policies, customs and failure to train, of the City of Boston as described above.

68. As a direct and proximate result of defendants' actions, plaintiff suffered the damages described above.

**WHEREFORE,** plaintiff requests that this Court:

1. award compensatory damages;

2. award punitive damages against defendants Roberto, Rodriguez, Delacruz and Lamb;

3. award the costs of this action, including reasonable attorney's fees; and

4. award such other further relief as this Court may deem necessary and appropriate.

Dated: February 4, 2013                                ALEXANDER BRIAN ARREDONDO

                                                       By his attorney,


                                                       */s/ Bruce T. Macdonald*
                                                       Bruce T. Macdonald
                                                       BBO #310400
                                                       P.O. Box 255
                                                       Nutting Lake, MA 01865
                                                       (978) 663-4680
                                                       Email: btm95@aol.com


**PLAINTIFF CLAIMS TRIAL BY JURY**

13

## CERTIFICATE OF SERVICE

      I, Bruce T. Macdonald, attorney for plaintiff herein, hereby certify that the foregoing document was served via ECF filing to all registered participants on this 4th day of February, 2013.

                                                      */s/ Bruce T. Macdonald*
                                                      Bruce T. Macdonald