UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER BRIAN ARREDONDO, ) <br> a/k/a CARLOS ARREDONDO, ) <br>  ) <br> Plaintiff, ) <br>  ) <br> v. ) <br>  ) <br> DAVID ROBERTO, FRANCISCO ) <br> RODRIGUEZ, BIENVENIDO DELACRUZ, ) <br> DANA LAMB, and CITY OF BOSTON, ) <br>  ) <br> Defendants. ) <br>  ) | Civil Action No. <br> 12-11785-FDS |

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

This is an action under 42 U.S.C. § 1983 and related state-law theories, arising out of an arrest. Plaintiff Alexander Brian Arredondo alleges that he parked his vehicle in a handicapped parking space in order to observe the funeral procession of Senator Edward M. Kennedy. Arredondo alleges that he was unlawfully placed under arrest, that excessive force was used against him, and that he was unlawfully charged with disorderly conduct and resisting arrest. He has brought suit against defendants the City of Boston and Boston police officers David Roberto, Francisco Rodriguez, Bienvenido Delacruz, Dana Lamb asserting claims under both federal and state law.

Defendant the City of Boston has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion will be denied.

**I.      Background**

For purposes of a motion to dismiss, the Court takes the factual allegations in the complaint as true.

Alexander Brian Arredondo and his wife, Mélida Arredondo, became involved in antiwar movements in the Boston area and nationwide after the death of their son in Iraq in 2004. (*See* Compl. ¶ 34). Since 2005, Arredondo and his wife have been members of organizations called Gold Star Families for Peace, Military Families Speak Out, and Veterans For Peace. They have participated in rallies, demonstrations, and protests against the wars in Iraq and Afghanistan and against political leaders who supported the wars. (*Id.*).

On August 29, 2009, Arredondo and his wife traveled to Boston to watch Senator Kennedy's funeral motorcade. According to Arredondo, he went to pay tribute to Senator Kennedy for the assistance he provided to Arredondo's family after the death of his son in 2004. (*See id.* at ¶¶ 10-11). Arredondo planned to create a memorial to Senator Kennedy centered around his decorated pickup truck, which he parked along the motorcade route in front of Boston Police Headquarters at One Schroeder Plaza. (*See id.* at ¶ 10). Arredondo parked in a space reserved for use by handicapped persons, because his wife was disabled and required the assistance of a cane to walk. The Arredondos had a "Disabled Persons Parking Identification Placard" hanging from the interior rearview mirror. (*Id.* at ¶ 12). Upon arriving at the parking space, Arredondo's wife got out of the truck and started walking toward another part of the motorcade route carrying a homemade sign. (*See id.* at ¶¶ 13, 15).

As part of his tribute to Senator Kennedy, Arredondo planned to raise an American flag on a 26-foot flagpole that was in the bed of his pickup truck. (*See id.* at ¶ 14). While he was

raising the flag, Officer David Roberto of the Boston Police Department informed Arredondo that he was parked in a handicapped space and told him to move immediately. Arredondo pointed out that he had a handicapped placard, but Officer Roberto still insisted that he move the truck. Arredondo then responded that he needed to take down the flagpole and summon his wife before he could move the truck. Officer Roberto stated that unless Arredondo moved "now," he would be arrested. (*Id.* at ¶¶ 16-18).

Arredondo repeated his request for time to lower the flagpole and summon his wife. Officer Roberto responded by calling for backup on his radio. (*Id.* at ¶ 19). Officers Francisco Rodriguez, Bienvenido Delacruz, and Dana Lamb arrived on scene. According to Arredondo, they proceeded to grab him, drag him to the sidewalk, throw him to the ground, and handcuff him. During the course of his arrest, all four officers were at various times on top of him holding him down on the pavement. (*See id.* at ¶¶ 16-18). Upon becoming aware of the commotion, Arredondo's wife returned to the scene and began taking photographs. (*Id.* at ¶ 21).

Arredondo was transported to a Boston police station and placed in a holding cell. He complained of severe pain and difficulty breathing, and was transported to Boston Medical Center for treatment about an hour after arriving at the station. (*Id.* at ¶ 22). He was shackled to a hospital bed for approximately nine hours before a bail commissioner arrived, and then he was released from custody. He remained in the hospital overnight for observation. (*Id.* at ¶ 24).

Arredondo was charged in the Roxbury District Court with disorderly conduct and resisting arrest. The complaint was dismissed on January 28, 2010, at the request of the Commonwealth. (*Id.* at ¶ 25).

On August 27, 2012, Arredondo filed suit in Superior Court against the City of Boston

and Officers Roberto, Rodriguez, Delacruz, and Lamb, asserting claims under both federal and state law.  Defendants timely removed to this Court.  Arredondo subsequently filed an amended complaint, which asserts claims against the individual officers under 42 U.S.C. § 1983 for violations of the First and Fourth Amendments (Counts 1-2), under Mass. Gen. Laws ch. 12, § 11I (Count 3), and under various state law tort theories (Counts 4-8).  The amended complaint also asserts a claim against the City of Boston under 42 U.S.C. § 1983, alleging that the officers' violations of plaintiff's constitutional rights were caused by the City's policies or customs (Count 9).

The City of Boston has moved to dismiss Count 9 for failure to state a claim upon which relief can be granted.

**II.**   **Analysis**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft*, 129 S. Ct. at 1949.  "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Dismissal is appropriate if the complaint fails

to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (*quoting Centro Medico del Turabo, Inc., v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### A.     Municipal Liability

The City argues that the complaint fails to state a claim against it for violation of § 1983 because it does not allege that any policy or custom of the City caused the alleged violations of plaintiff's constitutional rights.[1]

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[L]iability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury." *See Kelley v. Laforce*, 288 F.3d 1, 9 (1st Cir. 2002), citing *Monell*, 436 U.S. at 690-691.

Here, the amended complaint alleges that three general policies or customs of the City of Boston caused the constitutional violations at issue:  (1) failure to train officers properly; (2) failure to monitor or discipline untruthful reporting by officers; and (3) a policy of conducting surveillance of antiwar and peace groups.

---

[1] "[A] municipality cannot be held liable under § 1983 . . . absent an underlying constitutional violation by one of its officers." *DiRico v. City of Quincy*, 404 F.3d 464, 469 (1st Cir. 2005).  However, for the purposes of this motion to dismiss, the City assumed that at least one constitutional violation had been properly alleged.  The Court will do the same.

### 1. Failure to Train

A municipality may be liable under § 1983 for failure to train its police officers if "that failure causes a constitutional violation or injury and 'amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *DiRico v. City of Quincy*, 404 F.3d 464, 468 (1st Cir. 2005), citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Here, the complaint alleges that the City failed to train its police officers adequately in the proper methods for identification and enforcement of parking violations, particularly under circumstances where citizens are exercising their First Amendment rights to free assembly and speech. The complaint also alleges that the City failed to train its police officers in the proper methods for, and importance of, accurate police reporting. It further alleges that the lack of training caused the deprivation of plaintiff's First and Fourth Amendment rights and demonstrated a deliberate indifference to those rights. The complaint specifically alleges that plaintiff's First Amendment rights were violated at antiwar and peace demonstrations between 2003 and 2009 due to the lack of training.

Of course, whether plaintiff can prove those claims is not the issue at this stage. Accepting the allegations as true, and drawing reasonable inferences in plaintiff's favor, the complaint states a *Monell* claim for failure to train under § 1983.

### 2. Failure to Monitor

The complaint further alleges that the City had a policy or custom of "tolerating" the filing of untruthful reports by its police officers. This is essentially a claim based on an alleged failure to provide proper supervision to police officers. Under § 1983, courts have treated claims for both failure to supervise and failure to train under the general category of supervisory

liability. "Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 14 (1st Cir. 2005) (citing *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999)).

Although the complaint alleges that the City's tacit authorization of inaccurate reporting resulted in an untruthful police report being filed about his conduct on August 29, 2009, it is unclear, to say the least, how this allegedly inaccurate reporting is related to the underlying constitutional violations. Ultimately, plaintiff will be required to demonstrate both the existence of a policy or custom and a "direct causal link" between that policy and the alleged constitutional deprivation. *Harris*, 489 U.S. at 385; *see also Monell*, 436 U.S. at 694 (policy must be the "moving force [behind] the constitutional violation"). However, because the Court finds that the other allegations concerning policies or customs of the City are sufficiently related to the alleged constitutional violations to survive a motion to dismiss, it need not consider the allegations concerning untruthful reporting in isolation, and will not dismiss Count 9 on that basis.

### 3. Surveillance of Antiwar Groups

The complaint also alleges that the City has a policy of conducting surveillance of antiwar and peace groups, improperly placing members of those groups under investigative scrutiny. According to the allegations, the City videotaped demonstrations conducted by these groups, monitored the communications of group members, and maintained files containing the information collected, even where no evidence of criminal activity was discovered. The complaint alleges that, as a result of this policy, individuals who were members of antiwar groups or who were engaging in antiwar protests, such as plaintiff, were more likely to be

targeted by Boston police officers than other citizens. These allegations essentially accuse the City of maintaining policies that have the effect of exercising impermissible viewpoint discrimination in the enforcement of the law. According to the complaint, plaintiff was just one of a number of people who were unconstitutionally targeted and abused by police.

Again, whether plaintiff can prove these claims is not the issue at the pleadings stage. Accepting the allegations as true, and drawing reasonable inferences in favor of plaintiff, the Court is not prepared to find at this stage that those allegations fail to state a claim within the meaning of Rule 12(b)(6).

Accordingly, defendant's motion to dismiss for failure to state a claim upon which relief can be granted will be denied.

### III.    Conclusion

For the foregoing reasons, the defendant's motion to dismiss is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: May 29, 2013					United States District Judge